IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NANCY MALONEY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | 1:06CV00124 |
| ) | |
| DISCIPLES LIMITED, LLC , COLVIN ) | |
| ENTERPRISES, INC., and JOHN K. ) | |
| COLVIN, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION

TILLEY, District Judge

Plaintiffs filed the Complaint in this matter on February 6, 2006 asserting various causes of action and seeking damages sustained as the result of an allegedly fraudulent investment scheme. [Doc. # 1]. Defendants executed Waivers of Service of Summons but have not filed Answers to the Complaint. Plaintiffs seek entry of a default judgment against defendants for actual investor losses plus 12% interest through May 29, 2007 amounting to $ 3,033,973.05, trebled pursuant to the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), for a total of $ 9,101,919.15. Plaintiffs have also requested an award of attorney's fees and expenses pursuant to the UDTPA.

I.

In an Order dated May 8, 2007 (the "May 8 Order"), Plaintiffs were instructed to file an affidavit supporting the requested damages as well as an

affidavit in support of the request for attorney's fees. [Doc. #28]. In response to the May 8 Order, Plaintiffs submitted the affidavit of Glen Edward Smith, Jr., a financial consultant hired by Plaintiffs to calculate their damages. Schedule A to Mr. Smith's affidavit lists each of the individual Plaintiffs by name, identifies the principal amount of each Plaintiff's investment in the promissory note issued to that Plaintiff, calculates the 12% interest owed to that Plaintiff, and totals the sum owed to all Plaintiffs collectively.

As discussed in the May 8 Order, in cases involving default judgments and promissory notes, it is not necessary to conduct a hearing and damages may be determined by way of affidavit and other documentary evidence. Mr. Smith's affidavit and attached schedule are sufficient to enter Judgment for the Plaintiffs in the amount of $ 9,101,919.15, representing the total loss of each Plaintiff trebled pursuant to the UDTPA.

II.

Plaintiffs also submitted an affidavit from their Counsel in response to the May 8 Order. In his affidavit, Counsel explained that his regular hourly rate was $ 300.00, and that on an hourly basis, his firm's legal fees would have totaled $ 97,950.00. [Doc. #31, ¶ 7]. Counsel stated that his firm had advanced reimbursable costs in the amount of $4,175.00. However, Counsel stated that he was requesting a fee award in the amount of $ 3,033,973.05 based on the contingency fee agreements that each of the Plaintiffs had executed. [Doc. #31,

¶ 8].

In an Order dated June 12, 2007 (the "June 12 Order"), the Court reviewed the affidavit submitted by Counsel regarding the requested attorney's fee and instructed counsel for Plaintiffs to submit a supplemental affidavit addressing the factors applied by the North Carolina Courts in determining the reasonableness of fees requested pursuant to the UDTPA. On July 10, 2007, rather than submitting the affidavit requested in the June 12 Order, Counsel submitted a memorandum asserting that (1) the Court should enter the requested fee based on the "33.3% contingency fee contract agreed upon by the Plaintiffs"; (2) a percentage fee of 33.3% of the Plaintiffs' damages is proper in this case under the "common fund" doctrine; and (3) an award of 33.3% of the Plaintiffs' damages is reasonable. As discussed below, each of these arguments are without merit.

A.

First, Counsel asserts that the Court should enforce the contingency fee agreements and enter a judgment awarding attorney's fees in the amount of 33.3% of the amounts recovered on behalf of the Plaintiffs. In awarding attorney's fees pursuant to a North Carolina statute, such as the UDTPA, however, the North Carolina Court of Appeals has clearly held that "a contingent fee contract does not control the trial court's determination and, when a statute provides for a "reasonable" fee, the amount of the fee should be based upon the actual work performed by the attorney." Epps v. Ewears, 90 N.C. App. 597, 600, 369 S.E.2d

3

104, 105 (1988) (awarding fees pursuant to N.C. Gen. Stat. § 6-21.1); <u>Bandy v. City of Charlotte</u>, 72 N.C. App. 604, 608-09, 325 S.E.2d 17, 20-21(1985) (awarding fees under condemnation statute and noting that "contingent fee agreements cannot be binding on the court if they are at variance with the reasonable value guide"); <u>Redevelopment Comm. v. Hyder</u>, 20 N.C. App. 241, 245-46, 201 S.E.2d 236, 239 (1973) ("These fee contracts [are] binding upon the parties who executed them but not upon the court which, under the statute, fixes the fees to be taxed against a third party.").

Although these cases were not decided under the UDTPA, Counsel has not identified any North Carolina cases where a court awarded fees pursuant to contingency fee agreement when the fees were sought under the authority of the UDTPA. Therefore, the contingency fee agreements executed by the Plaintiffs will not be considered in determining whether the requested attorney's fees are reasonable.

B.

Counsel also asserts that an award of 33.3% of the Plaintiffs' damages would be proper under the "common fund" doctrine. Under the American Rule, parties generally must bear their own costs for litigation, regardless of whether or not they ultimately prevail. <u>Alyeska Pipeline Serv. Co. v. Wilderness Soc'y</u>, 421 U.S. 240, 247 (1975). However, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a

4

reasonable attorney's fee from the fund as a whole." <u>Boeing Co. v. Van Gemert</u>, 444 U.S. 472, 478 (1980). Plaintiffs correctly state that in such common fund cases, a reasonable attorney's fee is generally a percentage of the common fund recovered. <u>See</u> <u>Deloach v. Philip Morris Cos.</u>, No. 00-1235, 2003 WL 23094907, at *3 (M.D.N.C. Dec. 19, 2003).

However, this is not a common fund case. As the Supreme Court explained the doctrine in <u>Boeing</u>, a common fund is created by a litigant "for the benefit of persons other than himself." <u>Boeing</u>, 444 U.S. at 478; <u>see also</u> <u>Hall v. Cole</u>, 412 U.S. 1, 7 n.7 (1973) (explaining that the common fund exception to the American Rule "has its origins in the 'common fund' cases, which have traditionally awarded attorney's fees to the successful plaintiff when his representative action creates or traces a 'common fund,' the economic benefit of which is shared by all members of the class"). In this case, the litigation efforts of the Plaintiffs are not benefitting persons other than the Plaintiffs. Rather, each of the Plaintiffs seeks to recover the amount that he or she is owed based on non-payment of a promissory note issued by defendants. Thus, the results of this litigation will not create a common fund.

Moreover, even if this were a common fund case and a percentage of the common fund collected were the appropriate measure of attorney's fees in the case, such fees would be awarded *from* the common fund. In this case, counsel for Plaintiffs has requested treble damages on behalf of the Plaintiffs in the amount of $ 9,101,919.15. If Counsel for Plaintiffs were awarded attorney's fees in the

5

amount of 33.3% of Plaintiff's recovery, then Counsel would receive $ 3,033,973.05 in attorney's fees and the award for the Plaintiffs would be reduced to $ 6,067,946.10. Here, however, Counsel for Plaintiffs has requested that judgment be entered in the amount of $ 12,135,892.20: $ 9,101,919.15 for the Plaintiffs and $ 3,033,973.05 in attorney's fees. Even assuming that a percentage award would be proper under the common fund doctrine on the facts of this case, Plaintiffs have cited no authority for the proposition that the award of attorney's fees should be *in addition to* the common fund awarded to the Plaintiffs.

B.

Finally, Plaintiffs assert that an award of $ 3,033,973.05 is reasonable. As noted in the June 12 Order, to determine whether a requested fee is reasonable under the UDTPA, the trial court must consider: (1) "the novelty and difficulty of the questions of law"; (2) "the adequacy of the representation"; (3) "the difficulty of the problems faced by the attorney"; and (4) "the kind of case . . . for which the fees are sought and the result obtained." United Labs., Inc. v. Kuykendall, 335 N.C. 183, 195, 437 S.E.2d 374, 381-82 (1993). The North Carolina Court of Appeals has identified additional factors that should be considered: "Appropriate findings include findings regarding the time and labor expended, the skill required to perform the services rendered, the customary fee for like work, and the experience and ability of the attorney." Barbee, 115 N.C. App. at 648, 446 S.E.2d at 122.

6

1.

With respect to the time and labor expended and the adequacy of the representation, Counsel was retained in early December 2005, and the Complaint was filed on February 6, 2006. Thus, Counsel for Plaintiffs conducted an investigation for a period not exceeding two months prior to filing suit. There has not been significant activity in the case since that time. In particular, since the filing of the Complaint in this matter, Plaintiffs have filed the following: (1) a Motion to Appoint a Receiver in April 2006; (2) executed Waivers of Service on April 14, 2006; (3) a Motion for Entry of Default on May 2, 2006; (4) a Motion for Default Judgment and supporting Memorandum on June 19, 2006; and (5) a Motion to Compel and For Sanctions for Defendants' failure to participate in discovery.

As noted above, the May 8 Order instructed counsel to submit an affidavit in support of the requested damage award as well an affidavit in support of the request for attorney's fees. Plaintiffs responded to this Order on May 29, 2007, one day after the documents were due. Despite the untimeliness of the affidavits, the Court accepted the affidavit in support of the requested damage award and stated that it would award damages in the amount requested.

As to the affidavit in support of the request for attorney's fees, however, the submitted affidavit was insufficient to support an award of fees. In the June 13 Order, Plaintiffs were instructed to submit a second affidavit regarding the

requested attorney's fees. [Doc. # 33]. In the June 13 Order, the Court identified the factors that North Carolina courts consider in determining whether a fee award under the UDTPA is reasonable and instructed Plaintiffs to submit "a supplementary affidavit that will allow the Court to make the requisite findings to support a request for attorney's fees under the UDTPA." [Id.].

As noted above, however, Plaintiffs did not submit a second affidavit addressing the factors considered by the North Carolina Courts in UDTPA fee cases as Ordered. Instead, Plaintiffs submitted a Memorandum arguing why the Court should enter an award equal to 33.3% of the Plaintiffs' damages. The memorandum also made cursory reference to fee factors considered by federal courts when making attorney's fee awards pursuant to federal law but did not address, as Ordered, the factors to be considered in awarding fees pursuant to the UDTPA. [Doc. # 28.]

The document did not, for example, set out the hours expended for particular tasks so that the Court could evaluate the reasonableness or necessity of work making up the $97,950 which counsel's "firm" legal fees are asserted to total. The original affidavit refers to work by at least one non-lawyer in the firm and there is no basis to determine what work was undertaken by that person and what was undertaken by counsel. On the documents submitted by Counsel, there is no factual basis for a decision that work performed was reasonably necessary given the facts and posture of this case. This is so even though counsel's earlier

9

affidavit had referred to meticulous time records maintained during pursuit of the matter.

2.

As to the difficulty of the problems faced by the attorney and the result obtained for the clients, Counsel asserts that he has encountered difficulty in this matter because he has been forced to "chase the Defendants" and has been "regularly frustrated by the Defendants' lack of communication, cooperation and even their lack of providing meaningful information a to their whereabouts."

Other than drafting the complaint -- which one might think to be a routine endeavor for a skilled securities lawyer with ready access to form books and complaints from previous cases, there is little to show any difficulty counsel has encountered other than getting the opposition to respond. Counsel has not been put to the task of responding to motions to dismiss or for summary judgment. And, except for the aborted deposition of Defendant Colvin, there have been no depositions to attend, no interrogatories to answer and no documents to produce. In fact, with the exception of the 15 minute deposition of Defendant Colvin, Counsel's discovery in this matter consists of drafting a request for production of documents, to which Defendants never produced any documents for review, and filing a Motion to Compel Defendants' failure to comply with the Notice of Deposition and request for production of documents. [See Doc. # 23].

Counsel asserts that a fee in excess of $ 3 million is reasonable in light of

10

the fact that it will take "an additional 100 hours of professional time . . . to engage in post-judgment discovery and [to execute] and levy on the Defendants assets." Plaintiffs cite no authority for the proposition that the time taken to collect a default judgment should be considered when calculating an appropriate fee. However, even assuming that collection efforts should be considered in determining the reasonableness of a fee, a fee approaching the $97,950 amount, much less one in excess of $ 3 million, appears excessive based upon the materials furnished.

3.

The remaining factors address similar issues and may be considered collectively. These factors include the type of case involved, particularly the difficulty of the legal questions at issue, the skill of the attorney, and the experience and ability of the attorney.

Plaintiffs assert that "[securities law and securities fraud litigation is a highly complex and quickly-evolving area of the law." [Doc. #38 at 7]. In addition, Plaintiffs assert that "large-scale group securities cases litigation requires a high degree of skill and experience" and that "[t]o obtain an extraordinary result on behalf of a plaintiff group, a very high level of skill is required." [Id.]. Counsel also states that he is a skilled securities attorney. However, instead of providing an averment of his qualifications and experience in litigation and, in particular, securities litigation, counsel invited the Court to obtain that information by perusal

of his website.

It cannot be disputed that securities work may be complex and that the successful litigation of such cases may require significant skill and experience on the part of counsel. The acknowledged complexity of a typical securities case notwithstanding, this matter is before the Court in a Default Judgment posture. Despite the fact that this matter involves allegations of securities fraud, when defendants have chosen not to mount a defense, as here, the matter requires neither the significant investment of counsel time nor the application of skill that would be expected in a contested case. In fact, as Counsel has stated, he was able to meet with each of the individual Plaintiffs, investigate the facts of this matter, including the securities fraud issues, and draft a Complaint within a two-month period. Since then, Counsel has spent limited time actually prosecuting this matter.

4.

While it is apparent that some effort has been put forward, it is impossible to determine from the information before the Court exactly what was done, who did it, how long it may have taken and whether particular tasks were reasonably related to the procurement of judgment. Counsel was instructed by order of May 8, 2007 to provide an affidavit supporting the request for an award of attorney's fees. When that affidavit failed to provide an adequate basis for a fee determination, the Court set out the standard applied by North Carolina courts

12

when calculating attorneys' fees under the UDTPA and directed counsel to provide another affidavit with facts to which the standard could be applied. Counsel did not follow the Court's instructions but filed a memorandum of law relating to the common fund doctrine instead of an attestation of fact supplying the information which would allow an informed calculation. In addition, counsel invited the Court to look at his website instead of attesting to his experience and qualifications.

Having no basis upon which to make an informed calculation after having given counsel reasonable opportunity to provide it, the Court declines to award attorney's fees.

### III.

In sum, Plaintiffs are entitled to judgment in the amount of $ 9,101,919.15, representing the total loss of each Plaintiff trebled pursuant to the UDTPA, which shall be distributed to the Plaintiffs according to the itemized list contained in Schedule A to the Smith Affidavit. [Doc. #30]. Plaintiffs are awarded costs in the amount of $4,175.00. Therefore, default judgment shall be entered against the Defendants in the amount of $ 9,106,094.15.

This the day of July 19, 2007

                                       /s/ N. Carlton Tilley, Jr.
                                       United States District Judge